Jones, J. (dissenting).
I would grant judgment to the petitioning parents in both of these cases.
*442 The claims of the parents of these handicapped children are being rejected solely on the ground that they were not timely presented. The city concedes that, had the same claims been presented before the close of the school year for which educational aid was sought, they would have been paid in full and without cavil.[1] The only predicate for the city’s position here would appear to be slavish, mechanical worship of a bureaucratic accounting period, and that without identifiable legal authority.
No one disputes that the city has legal responsibility for providing the direct cost of education of all handicapped children (Matter of Levy, 38 NY2d 653, 658). This entitlement is fundamental and of long standing, and is confirmed by the express provisions of the Family Court Act (§ 232, subd [a], par [1]; § 234, subd [a]). (Cf., also, Education Law, § 4407.) Unlike welfare benefits, the right to a free tuition is not dependent on meeting any economic means test; it exists irrespective of the financial competence of the parents (Matter of Levy, supra). Nor is this principle controverted by the city.
I find no statutory provision or administrative regulation, however, which supports the assertion that application for the educational aid must be made at any specified time or more pointedly that it must be made before the close of the school year. Nor does the city invite our attention to any such provision or regulation.
The arbitrariness of the city’s position becomes apparent on examination of the arguments it advances in support of its position. First, it says that opportunity to conduct a current evaluation of the student’s need and then to make a determination as to the availability of suitable public educational facilities will be lost unless application for assistance is made within the school year. Two answers are at hand. In the first place this would be equally true where the application is made with respect to any particular school year on the last day of that year. Yet the city concedes that such an application would not be rejected for untimeliness. Second, and more significantly, our courts and administrative agencies are every day determining a multitude of substantial rights after the fact. At the time of the determination evidence is received as to the circumstances and conditions at the earlier critical *443 date. Problems may arise, to be sure, but conceptually this contention is wholly hollow.
Then the city argues that the parent is not entitled to recover for payments voluntarily made without expectation of reimbursement. This principle, applicable in appropriate instances in determining the private rights of parties to matrimonial controversies, has no application here. It cannot realistically be said that the principle has any relevance to this situation. Free education for handicapped children has been mandated as the public policy of this State. There is nothing in Constitution or statute to warrant any differentiation between direct payment and reimbursement. To the extent that the right finds its source in constitutional provision any waiver is not lightly to be implied. There is nothing in the records before us from which even an inference of waiver may be drawn. And again, what of the applicant who files his claim for a full year’s reimbursement on the last day of the school year?
The shallowness of the city’s position becomes even more transparent when the actual facts in these cases are reviewed. In L. the application was made in mid-1973-1974 for each of the years 1971-1972, 1972-1973 and 1973-1974 and was granted as to 1973-1974 (the current year) and denied as to past years 1971-1972 and 1972-1973. For all three years the State had approved tuition aid in the annual amount of $2,000 under section 4407 of the Education Law.[2]
The record includes evidence of the State’s approval for L.’s attendance at Reece School for each of the three school years. The record also contains evidence that with respect to 1973-1974 the city approved L.’s attendance at a private school on the ground that the city’s public school system was "unable at this time to provide an appropriate educational facility” for L. Corresponding city documentation for the two prior years was denied on the ground of the alleged late filing of the claims. As stated earlier, however, the city concedes that the claims are substantively meritorious.
In K. the application was made in July, 1974 for reimbursement for the two school years 1971-1972 and 1972-1973. Here, too, the State had approved tuition under section 4407 for *444 each of these years, and had also approved K.’s attendance during such years at Reece School. There is also a statement of the city board of education with respect to the year 1972-1973 that its public school system "was not able to offer an adequate educational facility” for K. And again the city raises no question as to the merits of the application.
It appears that when these proceedings were instituted if the Family Court had directed the city to reimburse the petitioning parents with respect to past years the city could not then have obtained reimbursement from the State of the State’s 50% share. On November 21, 1974, however, the Board of Regents adopted a new section 200.8 of the Regulations of the Commissioner of Education (8 NYCRR 200.8). The city agrees that under the application of this new section it would now recover full 50% reimbursement from the State for any payments it might be directed to make to the parents of L. and K. in the present proceedings.
Should there prove to be any volume of claims for reimbursement for prior years, I can recognize that practical problems might arise, budgeting difficulties might be encountered if the only cutoff were the six-year Statute of Limitations under CPLR 213 (subd 1) (the applicable Statute of Limitations in my opinion), supplemented in perhaps a few instances by the inability, due to the passage of time, of a claimant parent to furnish sufficient proof. If such problems do indeed rise to the level of administrative or economic significance, it is open to the city, in my view, after appropriate notice to adopt a suitable regulation (there now is none) clearly setting forth the applicable limitation of time. This appears to be precisely what the State Education Department has done (8 NYCRR 200.8). The promulgation of such a regulation would afford an opportunity for the city and interested parents and taxpayers publicly to address and resolve the policy and practice issues involved. Thereafter, due notice having been given, parents eligible to the educational entitlement for their handicapped children could be guided accordingly.
The court today, however, is lending judicial sanction to what is in substance the retroactive adoption of an indefinite deadline for which no prior notice was given and for which there is no authority in statute or regulation. Even the conceded current financial difficulties of the City of New York cannot justify the result which the majority announces.
*445 Chief Judge Breitel and Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Jasen; Judge Jones dissents and votes to reverse in a separate opinion in which Judge Cooke concurs.
In Matter of L.: Order affirmed, without costs.
Chief Judge Breitel and Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Jasen; Judge Jones dissents and votes to affirm in a separate opinion in which Judge Cooke concurs.
In Matter of K.: Order reversed, without costs, and the petitions dismissed.

. The majority adopts a position even more stringent than does the city, i.e., that the claim for reimbursement must be made promptly within the particular school year.

. Educational aid for handicapped children appears to operate with respect to each school year as follows. The State pays $2,000 under section 4407 of the Education Law; the balance is paid in the first instance by the city which is then reimbursed to the extent of 50% of such balance by the State (Education Law, § 4403).